Our first case for argument, Medici v. Chicago, Ms. Friedman Thank you. Good morning. May it please the Court, Linda Friedman, on behalf of the Appellants. There are two issues before the Court this morning. First, whether this appeal is moot, and second, whether the District Court properly dismissed this First Amendment case with prejudice following a motion to dismiss. Well, what do you want? What do your clients want? Our clients would like to return to the District Court, have a trial on the issue of whether the policy violated their First Amendment rights, and to be entitled to recover legal damages and equitable relief. Well, you have to speak up. Entitled to what? Legal and equitable damages. The equitable damages would be an injunction. The damages that are equitable would be an injunction, which we concede is moot. Well, wait a second. Injunction is not damages. Monetary damages for the deprivation of their First Amendment rights. This Court's precedent would provide Well, how much in damages are you asking for? The range of damages could be anywhere from a nominal award all the way to $100,000, supported by this case's precedent. What's that? What would justify $100,000? In this case, for example, Mr. Medici fought in the Iraq War. He went to protect What does that have to do with the tattoos? The tattoos are a memorial to his fallen comrades and the pain and suffering that he suffered in being forced to suppress that memorial and not being allowed to publicly speak about the memory of the fallen. What do you mean publicly speak? He can say anything he wants. That's different from a tattoo. The tattoo that he put on his skin was intended to be a memorial and to engage in protected speech. Did it get the name of this person who had died? No. The tattoo? It was a broader Well, how is it communicating if there's no identification of the person in the tattoo? The tattoo was a halo and wings What? Halo and wings, which is commonly Would you speak up, please? The tattoo was a halo and wings, which is commonly recognized Yes, I know. And how does that identify the person who died? It did not identify the person who died. Well, then how is he communicating his memorial to people who see his tattoo? The symbol is one that is recognized in the military as Yeah, I know. But how will some person in Chicago seeing the tattoo think this is a military memorial? In particular, will have any idea who it was who is being memorialized? I don't believe that the tattoo in general memorialized a specific person. The tattoo was intended to speak to the loss of people in war setting But I don't understand that. The tattoos don't talk about losses? You have something like St. Michael holding a sword How does that communicate to anybody who sees the tattoo that this is about people killed in combat? The St. Michael is a religious tattoo relating to the protection of the police and not relating to people killed in combat What would be a typical tattoo in this case that is designed to memorialize people killed in combat? The halo and wings The halo? The halo and wings Well, how does the halo and wings communicate something about someone killed in combat? It's a symbol that is associated Well, who knows it's a symbol? People in Chicago know if you see halo and wings it's about people killed in Iraq or what have you? I think that people who see the tattoo would know that it was a tribute to the fallen The issue of whether or not the speech was pure speech and expressive speech and whether or not the tattoo was intended to state a matter of public concern was stipulated on the motion to dismiss So that particular record was not developed and it was not a factor in the court's decision because the city admitted below and admits here that it does not challenge those tattoos on the basis that they were not pure expressive speech or that they were not matters of public concern I understand the city has a ban but now these damages you said nominal damages might get $100,000 That's odd That's an odd choice I misspoke I think the nominal damages may be a dollar that flows for the deprivation of the First Amendment rights but the cases that have come out in similar circumstances have been a dollar have been $5,000, maybe $10,000 How is the court supposed to choose between $1,000 and $100,000? In the same way that the court makes these decisions on any other civil rights I don't understand. What would the court do? The court would listen to the evidence and the court would make a determination as to the emotional distress In this circuit, it's not uncommon to take a look at other cases to create some kind of a bell and to make a determination For example, in the context of a termination in a civil rights case those cases have been collided and rearranged When did you first bring up the question of damages? The question of damages appears in the prayer for relief How? Because it requests all other legal and equitable relief that the court may deem just And that's all it says? That's all it says and that was found to be sufficient in Killian and what's important about this particular case is how short it was pending The case was filed in July Within 20 days of service of summons, there was a motion to dismiss and by the end of September, the motion was fully brief and the case was dismissed with prejudice in October Would the district court fairly looking at this complaint think you were looking for damages or would he think you were looking for an order telling the city to stop this policy? In the judge's memorandum and opinion and order he restated what the relief was that was sought and didn't limit it to a declaratory judgment I'm sorry? Did not limit it to a declaratory judgment What did he precisely say? He said that the plaintiff sought 23B2 certification that the plaintiff sought a declaratory judgment that the plaintiff sought attorneys' fees and costs and such other relief as the court deems just So the court understood that that meant something to the plaintiffs Had the case proceeded even to the first initial status call there would have been a Rule 26 disclosure which would have set forth all of the damages that the plaintiff sought And what would have been those damages? So what damages really did the plaintiff suffer here? Some of the damages have been addressed in the proceeding before the arbitrator such as the cost of the materials that they were required to place on their skin to cover the tattoos Some of the class members had been disciplined Those discipline actions were rescinded The major damage that remains is an emotional distress damage relating to the allegation of the complaint that said that in the summer, which was a particularly difficult summer The arbitrator did give them some compensation, did he not? For removal of the tattoos What they had incurred in removing tattoos, things of that nature No, the arbitrator heard the case based on contract only So the arbitrator's damage was to rescind the tattoos and also to award the cost of the skins or the plastic that they had to put over the tattoos Seven people were given that money, which I think is about $3 a package to cover up the tattoo Your complaint, though, says nothing else about the nature or the extent of the damages, right? No, the complaint alleges that the plaintiffs suffered overheating and that they suffered discomfort when the tape was removed from the tattoos And that summer, notably, was one of Chicago's hottest years So do you want the judge to have a trial in which the plaintiffs would testify to their emotional injury, or what? Yes That's what you want? Yes, the question of whether the policy violated a contract is a different policy question than whether it deprived these plaintiffs of their constitutional right to speech I'm sorry, I didn't mean to interrupt you. Continue your answer to the judge So with respect to the First Amendment violation, there are additional damages that kick in The damages that are available include a damage for having to endure the loss of their First Amendment rights And we concede that those damages are not damages that are easily ascertainable But in the First Amendment context, this is always present What is the damage you award a person who lost an important civil right? Actually, in the First Amendment context, the presumption is that these are intangible rights And therefore, there is no remedy at law, such as damages, that would be available to compensate the loss of those rights And that's why injunctive relief is appropriate It seems to be, at least doctrinally, inconsistent to plead that remedies at law are insufficient And so injunctive relief is necessary, and then also ask for compensatory damages up to $100,000 for pain and suffering We did not ask for an injunctive relief, we asked for a declaratory judgment The final sentence said legal and equitable relief, which could have allowed for an injunction of appropriate Or could have allowed for monetary damages And I think that's a critical distinction The city is willing to read into that last sentence legal or equitable relief as appropriate The equitable relief that normally flows from a declaratory judgment is an injunction The declaratory judgment can either be the predicate for an injunction, or it can be the predicate for damages And we have cited in our brief a number of First Amendment cases where the damages were nominal, maybe $5,000, maybe $10,000 The very fact that the loss is intangible doesn't mean that it can't be compensated when the person suffered emotional distress No different than if a person was fired from a job and then turned around and got a job the next day that paid more money That person would have no losses because they earned more at their next job But they certainly would have a right to appear in front of a judge and explain what the emotional impact was of the deprivation of their civil rights And to ask that judge to award damages Ms. Friedman, how do you get around the Arizona against official English, excuse me, and our case, Chicago United Industries Those cases seem to require that in a case like this, you really need to fess up on the matter of damages in the complaint or you've got a problem I think Arizona is a case that is exactly on point In that case, there was a second amended complaint that was filed There was a two-day trial And then there were post-trial motions during which the plaintiff never mentioned that they sought damages And the other case that you cite is a good example where the court said it was only three months into the case And therefore, it would be appropriate to allow even amendment because there was no prayer for relief for damages In this case, what the city tries to do is say it's like Arizona because it's 15 months But in the 15 months, they're counting the time that the case has been in the court of appeals The time during which they sought a stay so that they could decide whether or not the city wanted to follow the arbitration award The actual life of this case was about 100 days You didn't seek to certify a damages class, though Your request to certify a class action was limited to 23b2, which is injunctive and declaratory relief That's right And we would say that you can award nominal damages under 23b2 But also in this kind of a case, the declaratory judgment becomes the springboard by which all class members can recover their damages Whether or not that would be in a 23b3 class certification proceeding How long was the prohibition against the tattoos enforced? It was put into place about a month before the lawsuit was filed And then the arbitration award, I believe, came out in March But it wasn't until the following September that the city publicly announced that it would no longer follow it So it was enforced during one of the hottest summers on record For how long? It was in place from June all the way at least till the following March Then the arbitration award came out and then it took until September for the city to publicly announce Although I don't believe they enforced it during that time period So the total period is how long? At least nine months And it was in effect during one of the hottest summers in the city's history And these officers were required to wear long sleeves and overheat, which is alleged in the complaint Or they were required to get up in the morning and cover the tattoos on their skin and then pull the tapes off So the complaint in the prayer for relief would have included those damages Such as the cost of the tape, the lost time if there had been discipline for class members Rescission of the discipline and emotional stress for the discomfort And like the Chicago case, because it had only been pending for a short period of time Even if this court found that the prayer for relief did not include the damages The case should be remanded and allowed to have an amendment filed to specifically request those damages On the motion to dismiss component I think it's important to understand that there are only four instances that have been cited in the briefs In which a court has dismissed a First Amendment claim on a motion to dismiss And those cases all have very disturbing facts, unlike this one The Rowe case involves a person engaging in lewd acts and videotaping himself Craig involves a high school guidance teacher firing for publishing a sexually charged book Jefferson involves the plaintiff police officer calling in and pretending to be a gang member Courts easily found all of that conduct on its face, which was set forth in the complaint To warrant dismissal of the complaint. The fourth case was a case in which Judge Wood concurred And criticized the majority for prematurely balancing, but it was a case on qualified immunity Which raises a different set of concerns. The Gustafson case is a very good example Of a case that was reversed by this court on a motion to dismiss And then ultimately the judgment in favor of the plaintiffs was sustained with the court finding That the First Amendment rights could not be trampled on based on hypothetical concerns that a government employer never expressed How far would you carry your argument? Suppose a police officer wanted to wear something That says criminals should be executed. Would that be? No. Why not? Because we only sought relief for the subset of tattoos That were military and tattoos that were religious. Why do you wish to curtail First Amendment rights that much? Consistent with the way the military, the navy The air force. Pardon? Consistent with the policies that are in place in the military For the navy, the air force and the marines. But why do they get preferred treatment relative to other people Other police officers who want to make First Amendment statements? I think there is a continuum So on the one side of the continuum is hate speech, is offensive speech Everybody agreed that that speech can be regulated. The navy regulates it, the air force regulates it, the marines regulate it. What's offensive about saying criminals should be executed? Something a lot of people believe. That would be probably in the middle territory expressing a view that would have to go through a Pickering analysis We did not have any class members who had those kinds of claims. People who hired us To challenge in the context of the military and in the context of religion and not in any other context We don't have any class members and are not aware of any of those situations. Okay, well thank you Ms. Friedman  May it please the court. Plaintiffs are challenging a policy that doesn't exist anymore And for that reason, this appeal is moot. And mootness aside, the policy did not violate the First Amendment Because the police department's interest in promoting uniformity and professionalism among its officers Outweighed the plaintiffs' interest in showing their tattoos while they worked Well why did you give up then? Well your honor, the plaintiffs' union obviously Pursued a challenge to the policy in arbitration and prevailed in that action And the arbitrator ordered us to rescind the policy. In light of that ruling It appears likely that any new policy would have to come as the result of negotiation That doesn't lessen the importance of uniformity in a police force I don't understand. What made the suit moot? The rescission of the policy that the plaintiffs challenged Yeah, but they're arguing that they were harmed by this policy in the nine months or whenever it was enforced So why don't they have a right to a judicial analysis Of the amount of harm they suffered and what compensatory damages would be Because your honor, plaintiffs did not assert a claim for compensatory damages Until the case was otherwise certainly moot because of the withdrawal of the policy And in such circumstances as the Supreme Court has said But was the arbitration over before they brought the suit? How did that work? The arbitration was decided when the appeal was pending So the policy took effect in around June Plaintiffs filed their suit in the district court about a month later And then the arbitrator ordered the policy withdrawn about nine months after it took effect Actually after the opening brief was filed, I think Yes, and after the opening brief was filed And nothing was said in the opening brief about a claim for compensatory damages And also nothing was said about a claim for compensatory damages in the plaintiff's opposition To our motion to dismiss in the district court So it wasn't until the city moved to dismiss this appeal as moot That the plaintiffs for the first time articulated any interest in damages And in light of that late decision to raise damages This court should decide that any damages claim has been waived On the merits, the city's interest in promoting uniformity and professionalism among its officers Plainly outweighed the police officer's interest in showing their tattoos while they were on duty As the district court properly decided And the district court also decided that the nature of those interests is so straightforward that they can be balanced without requiring discovery Well is the Pickering Doctrine even in play here? Certainly the district court so found and that would be an alternative basis for affirmance here Even if the plaintiffs were speaking on a matter of public concern however Their interest in that speech is plainly outweighed by the police department's interest Right, that's the Pickering test. I'm asking you the predicate question about why we're in Pickering territory at all This is just personal expression, it's not speech on a matter of public concern Well your honor we did not press that argument in our brief on appeal Right, but we do need to invoke the right doctrine here Sure, for purposes of appeal and reading the complaint in light Most favorable to the plaintiffs we were willing to concede the point of public concern Well assuming it's accepting your concession, why is Pickering the precedent rather than NETU? Because the supreme court your honor subsequently in row Made clear that national treasury applies where an employee is speaking On his or her own time on a matter unrelated to the employment And that's not what we have here, we have officers who wish to speak through their tattoos While they're working and by wishing to speak while they're in uniform They want to link their employment to their speech and as the supreme court made clear in row That's not a circumstance where national treasury should apply And since it's been recognized over and over again that uniformity is an important interest In any police force and visible tattoos plainly disrupted Or made the police force less uniform, the city's interest in uniformity Outweighed the plaintiffs interest in showing their tattoos You say uniformity and professionalism and that's all Don't you have to say a little bit more about why they're important and how they're important We get this all the time, it's kind of a buzz word As a government justification for something And why should it carry the day against the first amendment complaint How important was this to the city to have these guys Have to wear long sleeves in the summer so that a wing and a halo Wasn't going to show when they were on duty. Well your honor I think that the value of uniformity Is a more weighty buzzword as you use than some other justifications that you sometimes see In first amendment cases like general disruption to government operations Because here with respect to uniformity many cases have recognized that a uniform police force Is a valuable thing for many reasons because it makes officers more identifiable It promotes cohesion within the ranks and it avoids any potential miscommunication With members of the citizens and for all those reasons the city was justified In asking officers to cover up. The uniformity concern it seems to me would justify a regulation Prohibiting officers to alter their mode of dress or alter their uniform In personal ways. This doesn't really have anything to do with the uniform, right? Well, allowing visible tattoos does make the police force It doesn't alter the uniform, they're all wearing the same uniform It doesn't alter the clothing, correct, but to the extent officers do show visible tattoos That appearance makes them appear less like each other and therefore less uniform So these uniformity concerns are very much... I keep hearing an assertion as opposed to a justification What is the on the street significance of making the guy wear A long sleeved shirt in the summer in order not to show The angel and the herald. Certainly, your honor, there are competing interests at play Here and so on the one hand we have uniformity but on the other hand There are other considerations such as comfort. What I miss, I would have thought your concern Would be that if you're stopped by a police officer and then you see The tattoo, if it's prominently displayed, if it's Saint Michael, you can see how the citizen Might be puzzled, even nervous, feeling that He didn't just jaywalk or turn left without a signal or something But that he somehow has maybe violated some religious norm Certainly, your honor. But that has to be in the record at the testimony of a competent Expert saying this makes a difference, right? Well, as plaintiffs alleging their complaint Their tattoos are of a symbolic nature which creates the Possibility, the very strong possibility that a member... Can they wear religious medals? I'm sorry, your honor. Can they wear religious medals? How about a masonic ring? I'm not certain on that question. Somebody stops me with a masonic ring, I'd be a little upset. Can they wear one? There would certainly be justified in asking officers not to wear such a ring while on duty. We don't know that because this is at an early stage. But my point is, I don't know how you could justify winning this case on the merits At this point without that kind of testimony. Well, your honor, now that I think of it, I believe The rules governing uniformed officers do prohibit jewelry on hand, so I think that The ring that you're describing clearly would not be allowed. There's another problem you have If you wanted to ban these tattoos, it would really be very important For you to do it the first time someone noticed that a police officer Had this tattoo. The problem is once a whole bunch of them have tattoos You've got the problem of removing the tattoo, covering the tattoo Is it that easy to actually remove a tattoo? Is it that easy just to remove a tattoo? Can you remove a tattoo without leaving any kind of scar? I'm not sure, your honor, but the policy here did not require officers to have any tattoos removed I know, but having them covered can also be very awkward It can look as if the person has some injury It can be too hot in the summer and so on How many officers wore these? Wore tattoos, your honor? I'm not sure of those numbers. There are three named plaintiffs But if you had a number of them, then you could see how It would be awkward all of a sudden to say you've got to cover or remove your tattoos When they'd had no warning. Whereas if the first time You guys saw a police officer with a tattoo, if you had sent out a Bulletin to the entire police force saying you mustn't have tattoos or if you do you have to cover them Then they wouldn't get sort of entrapped Into doing something they thought was completely harmless and then it turns out They have to do something Well, your honor, in our view this is a very reasonable request that was put on these officers Because they weren't asked to have their tattoos removed. Officers who were hired were not barred from getting new tattoos And the policy did not affect officers' ability to show their tattoos while they were off duty The only request that was made of them was that they cover up those tattoos while they were on duty And interacting with members of the public. And given the importance of uniformity Among police officers, that was a worthwhile and reasonable request. So this is akin to A no jewelry policy. You mentioned that you think there's a no jewelry policy in effect And some articles of jewelry have an expressive content to them And so those would be swept up within that sort of a ban I think it's not merely that pieces of jewelry could have an expressive content, they might also interfere With an officer's ability to use his or her hands. So there might be other reasons for that particular Prohibition. Right, but to the extent that there were an objection by an officer On religious grounds or some other First Amendment Expressive conduct ground You know, I can't wear my crucifix, for example, because of this policy. And so you're depriving me of my right To engage in religious expression. It would be akin to that sort of an analysis Yeah, it sounds like that case would be more like a free exercise case and not a pickering case Well, usually those kinds of claims are analyzed under First Amendment principles Because it's expressive speech of a religious nature, obviously Mr. Collins, maybe we could change the focus for just a minute I very much would appreciate your take on the Arizonans against official English case And our Chicago United Industries case on the question of mootness. Thank you, Your Honor I'd appreciate your view. On Arizonans As the court explained, when a party raises Damages for the first time when the case is otherwise certainly moot That late claim requires close inspection And here the plaintiff's claim does not withstand Such inspection. And with respect to Chicago United, the claim there Was breach of contract. And the quintessential remedy for breach of contract Is damages. And that was the reason why the plaintiffs there were allowed to go forward On a damages claim that wasn't otherwise stated in the complaint. Here, however, we have a policy That plaintiffs allege damaged their First Amendment rights and they brought this case to get rid of the policy And now that the policy is gone, plaintiffs make this appeal as moot And their late request for damages doesn't withstand waiver How do you distinguish our decision in Killian? Your Honor, in Killian, that was not a case that was otherwise moot Because before the court reached the general claim for relief That was in the complaint there, the court decided that there was a solid damages claim in the case And INDICTA observed an additional potential claim based on the generic boilerplate claim For other legal and or equitable relief. I see. Thank you, Mr. Collins, I appreciate that. For these reasons, the appeal should be dismissed as moot or otherwise the judgment should be affirmed. Thank you. Okay, thank you, Mr. Collins. So, Ms. Friedman, you can have another minute. Thank you. Judge Ripple, in response to your question, the regulations only bar An officer from having no more than three rings without any specification With respect to the content of the rings. So he could have a KKK ring? Yes. The Chicago United Industry... But not a tattoo with St. Michael on it? Correct. And the same anomaly is seen in the officers who are dressed casually could have a Three rings and halo on their skin. On duty? On duty. They can wear that T-shirt? Yes. In lieu of the uniform? If they are designated casual duty, the casual duty allows Them to wear T-shirts that have messages on them so long as they're not offensive. So Mr. Medici, if he had been on casual duty, could take a photograph of his tattoo Place it on the T-shirt, wear the T-shirt, and would have to cover up the tattoo. That is why we argued it was under-inclusive. With respect to Chicago United, it is on all fours. This court found this case is different because the litigation had barely begun before it came to us. Even though the complaint did not include a prayer for damages, the case was not moot in light of the plaintiff's intention. Your brother's point is that the amount of time that has been taken in the litigation Really depends on the type of litigation. In other words, we can't compare cases simply by The amount of time that has elapsed until the damages issue arises. We have to say, how was damages raised in the context of this particular case? It was raised in the context of mootness in Chicago United Industry. The claim came for the first time on appeal, and the court allowed an amendment Because the case had only been pending below for three months. In that case, there was no prayer for damages, and we argue under Killian that we actually have pled damages. So your view is that time is the fulcrum of the analysis, am I right? No, time is not the focus of the analysis. The prayer for relief sets forth the claims. And then the question isn't how much time passed, but how wed to the position did the person get. So in Arizonans, there was a second amended complaint, a two-day trial, post-trial motions, And then, voila, we'd like damages. In this case, nothing had happened. Under the old federal rules, we would have been allowed to amend without even having leave of court to do so. We certainly would have filed a Rule 26 statement. We had made no commitment either way to a position, And the litigation had not even begun. So it isn't the amount of time that passes, Because three years could pass while the case has stayed, and nothing significant would have happened. But to indulge the court to conduct an entire trial and then raise the issue that you'd like damages is a little too late. The last point is that... Did any member of the public complain about the tattoos? That's a very good question. Yes. There were no complaints whatsoever. And what happened was, in this case, the phrase professionalism and uniformity is a buzzword, and it caused the judge below to have to create and hypothesize about reasons that that might create a problem. And we set forth in our brief that the court found that the tattoos would negatively impact the department's ability to ensure safety and order, and that we know that there was not a single complaint. Millions of interactions with the citizenry who regularly complain about police misconduct, and Mr. Medici was on the force for 10 years. Not a single complaint about his tattoo and the arbitrator found in the history of the police department. Not a single complaint. Right. But is that relevant to the Pickering-Garcetti analysis? Isn't it a legal balancing test, not a fact-bound test? It is a fact-intensive test. And what would have shown here was that the... What can you point to in Pickering and Garcetti that makes this a factual test as opposed to a legal... I've always understood it as a legal balancing test. This court, we did cite in our briefs cases for the proposition of the fact-intensive finding, but I think there's a distinction between it being a legal question as to who wins the balance. So who wins the balance would be the legal question, but it's dependent upon the facts of the case. And here the judge had to create the reasons, and we know that when the case actually went to an arbitration, those reasons were deemed to be false. And we put in our complaint that there was an explanation of, quote, uniformity and professionalism, and the judge made findings. He even said that they found that the... The court said that they found that the tattoos would cause members of the public to question whether allegiance to their welfare or safety is paramount. And what the arbitrator actually found after listening to all the evidence was that the ban was the result of an idiosyncratic preference by the chief of police not to have tattoos, that he did not like the tattoos. And he found no evidence at all to support a finding... The arbitrator didn't have a First Amendment question to decide. It was just a matter of whether this had to be collectively bargained, right? No. The arbitrator made a finding on the merits that the policy was arbitrary and heard evidence, the same kind of evidence we would bring forth... But it wasn't a First Amendment claim where actual findings are relevant to the First Amendment. So you could have a First Amendment claim where a defendant comes forth and says, professionalism and uniformity, and the plaintiff says, that is not true. That is not your reason. And that's what this evidence from the arbitration goes to, is what the arbitrator found is there had never been a complaint. These men had worn these tattoos for years, that the citizens never made a statement about it, and also made the express finding that the real reason was the idiosyncratic preference of the superintendent. So there's two ways you can win on the Pickering balance. One is, you can say, the proffered reason is just false. And that's what we argued in the briefs below, and that's what we argue here. is that not only was it not a sufficient reason, but it wasn't the real reason. The real reason was the superintendent did not like tattoos. Because there are too many things in the record that are inconsistent, like the t-shirts. Thank you very much to Mr. Friedman and Mr. Collins.